**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALEXANDER GRANT,<br><br>Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | CIVIL ACTION<br><br>No. __________________ |

## COMPLAINT

Plaintiff Alexander Grant, by his counsel, alleges as follows:

### Nature of the Action

1. Alexander Grant brings this action under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), to recover long-term disability benefits wrongfully withheld beginning November 27, 2025, enforce his rights under his employee benefit plan, and clarify his right to continuing benefits under its terms.

2. Defendant Unum Life Insurance Company of America (Unum) insured the benefits, administered Grant's claim, paid benefits, terminated them, and upheld its termination on administrative appeal. Grant challenges both Unum's application of the policy's twelve-month limitation and its determination that his continuing impairments did not prevent performance of his regular occupation.

### Parties Jurisdiction and Venue

3. Grant is an adult residing in Phoenixville, Chester County, Pennsylvania. He was an insured participant in the Penske Truck Leasing Co LP Group Insurance Plan (Plan), including its long-term disability coverage, when his disability began and is a participant entitled to enforce the benefit rights at issue.

4. Unum is a Maine insurance corporation with its home office at 2211 Congress Street, Portland, Maine 04122. It is authorized to conduct insurance business in Pennsylvania. Unum issued Group Policy No. 913907 001 to Penske Truck Leasing Co LP and exercised control over the benefit determinations and payment obligations at issue.

5. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1), established or maintained by Penske for its eligible employees. Grant is a participant within the meaning of 29 U.S.C. § 1002(7).

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. §§ 1132(e)(1) and 1132(f). The claim arises under ERISA, and jurisdiction does not depend upon a particular amount in controversy or diversity of citizenship.

7. Venue is proper under 29 U.S.C. § 1132(e)(2) because the alleged breach occurred in this District: Grant resides in Phoenixville, Chester County, and the benefits sought were payable to him there. The Plan also identifies Penske as its Plan Administrator, states that Penske administers the Plan, and gives its administration address in Reading, Berks County, within this District.

8. Unum is subject to this Court’s personal jurisdiction under ERISA’s nationwide-service provision, 29 U.S.C. § 1132(e)(2), and Federal Rule of Civil Procedure 4(k)(1)(C). It is a United States corporation conducting insurance business in the United States, including Pennsylvania.

**The Long Term Disability Coverage**

9. The policy provides monthly disability benefits after a 180-day elimination period. During the first twenty-four months of payments, disability requires limitations from performing the material and substantial duties of the insured’s regular occupation because of sickness

or injury, together with at least a twenty-percent loss in indexed monthly earnings from the same sickness or injury. The insured must remain under the regular care of a physician.

10. The regular occupation is the occupation routinely performed when disability began, as normally performed in the national economy. Its material and substantial duties are duties normally required for that occupation that cannot reasonably be omitted or modified. After twenty-four months of payments, the policy uses an any-gainful-occupation definition. The policy defines a part-time basis as the ability to work and earn between twenty percent and eighty percent of indexed monthly earnings.

11. The policy limits the lifetime cumulative payment period for disabilities due to mental illness and disabilities based primarily on self-reported symptoms to twelve months, subject to stated exceptions. Self-reported symptoms are manifestations reported to a physician that are not verifiable using tests, procedures, or clinical examinations standardly accepted in the practice of medicine.

12. The Plan’s claims procedures require a reasonable opportunity to review and respond to new or additional evidence and rationale before an adverse appeal decision. ERISA § 503, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1(h)(4) likewise protect that predecision opportunity.

13. The policy requires Unum to make benefit payments to the insured and provides for applicable deductible sources of income. Grant seeks the benefits due under the policy with properly applicable deductions and credits.

**Grant’s Occupation Disability and Administrative Appeal**

14. Grant's regular occupation involved management and analysis of data, responsibility for data accuracy and integrity, use of business software, communication with stakeholders,

and oversight of data processes and personnel. Its material duties required sustained computer and screen work, frequent keyboarding and fingering, near vision and accommodation, attention and working memory, judgments and decisions, and reliable performance to precise standards.

15. Grant's treating clinicians diagnosed and treated chronic migraine and new daily persistent headache. His continuing condition included intolerance of light, sound and visual stimulation; dizziness and impaired visual-vestibular tolerance; difficulty maintaining concentration and cognitive pace; and limited endurance for sustained screen-based tasks. These limitations affected the functions central to his regular occupation.

16. Unum approved Grant's claim and began long-term disability payments effective August 12, 2024. It continued payments through November 26, 2025. Grant remained under regular medical care and experienced the required earnings loss. His treatment included preventive and other medications, injections, occupational and vestibular therapy, and an August 2025 inpatient headache admission, without restoration of sustained occupational capacity.

17. On September 22, 2025, Lisa Bitton, OTR/L, assessed Grant's physical and computer-task capacity. She observed loss of conversational track requiring redirection, forehead frowning during computer reading, bilateral hand tremors during fine-motor testing, and balance difficulty. She concluded that he had significant limitations performing sedentary computer tasks and did not demonstrate sedentary work capability at that time.

18. Bitton completed a further functional capacity evaluation on October 21, 2025. It included standardized testing, work simulation, effort and reliability measures, clinical observations, and follow-up. She found high levels of physical effort and reliable pain and disability

reports, supported by grip-testing consistency, rapid-exchange grip testing, clinical consistency, negative placebo tests and a negative Hoover test.

19. During the October 21 computer and keyboard simulation, Grant stopped after one minute and 34 seconds, having completed one sentence, because of loss of concentration. He separately reported eye discomfort. The evaluation also documented tremors and limited tolerance for dexterity and other tasks, despite preserved grip strength and effort. Bitton concluded that Grant should not work at that time. The evaluation did not test eight continuous hours of computer work; Bitton's later clarification expressly acknowledged that limit and explained the clinical significance of the observed task failure for sustained work.

20. Grant's treating counselor, Monicka Fosnocht, LPC, documented a longitudinal pattern of impaired cognitive stamina. Her November 26 and December 2, 2025 notes recorded intermittent blocking of thought, working-memory difficulty, short-term-memory impairment and increased pausing and loss of conversational track after approximately 30 minutes, alongside otherwise preserved appearance, orientation, speech, judgment and other mental-status findings.

21. In an independent neuropsychological evaluation performed April 10, 2026, with a report dated May 12, 2026, Julie E. Keaveney, Psy.D., ABPP, evaluated Grant's cognition and psychological functioning, reviewed treatment records, and considered his occupational demands. The evaluation identified below-average performance in working-memory manipulation, rapid visual-symbol processing and retrieval monitoring within an otherwise broadly preserved cognitive profile.

22. The neuropsychological score table reported fifth-percentile performances on Digit Span Backward, Coding and the CVLT-3 intrusion measure. It also reported average or stronger reasoning, learning, retention, visuospatial and structured executive performances. Keaveney explained that preserved reasoning under structured conditions did not establish the efficiency or endurance needed to sustain rapid, complex and accurate work throughout a workday.

23. Performance-validity testing included a TOMM Trial 1 score of 40, below cutoff, followed by a Trial 2 score of 48, above cutoff. Word Memory Test indices, Reliable Digit Span and embedded recognition measures were acceptable. Considering the full pattern, Keaveney regarded the neurocognitive results as generally valid and interpretable, rather than treating the isolated lower initial trial as invalidating the evaluation.

24. Keaveney recognized substantial psychological distress and diagnosed somatic symptom disorder and adjustment disorder with anxiety and depressed mood. She explained that the psychological symptoms interacted with and exacerbated the chronic medical condition, but did not alone account for the severity and persistence of Grant's impairments. She attributed occupational incapacity to the combined effects of chronic pain, cognitive inefficiency, sensory hypersensitivity and reduced cognitive stamina.

25. By letter dated November 26, 2025, Unum terminated continuing LTD benefits, invoking the self-reported-symptom limitation and determining that Grant was not otherwise precluded from his regular occupation. It listed August 11, 2025 as the self-reported maximum date, November 26, 2025 as the paid-through date, and November 27, 2025 as the claim-closure date. That initial decision described keyboard use as only occasional.

26. Grant submitted his written administrative appeal and two parts of supporting evidence by fax on May 25, 2026. All three transmissions were delivered that day. Unum's May 29, 2026 acknowledgment confirmed receipt of the written appeal on May 25. The appeal challenged both the limitation's application and the determination that Grant could perform the actual sustained screen, visual, cognitive and precision demands of his regular occupation.

27. On July 1, 2026, Unum's appeal vocational consultant, Julie Degenhardt, completed an occupation review that recognized frequent keyboard use and fingering; reading printed and digital materials throughout the day requiring near acuity and accommodation; and understanding, memory, sustained concentration, persistence, social interaction and adaptation throughout the workday. She left the assessment of medical restrictions to the medical reviewers.

28. On May 29, 2026, the Social Security Administration issued a fully favorable disability decision finding Grant disabled under its rules since February 12, 2024. The decision retained sedentary exertional capacity but limited computer-screen use to no more than occasional and instructions to detailed but not complex, with additional restrictions. It found that he could not perform past relevant work and, considering vocational testimony, that no jobs existed in significant numbers that he could perform. Grant presented the Social Security determination during Unum's appeal process.

29. Unum obtained an appeal neuropsychology review from Staci Ross, Ph.D., dated June 25, 2026. Ross regarded performance validity as generally valid with one exception on part of a freestanding measure, recognized isolated attention and visual-processing weaknesses amid many preserved results, and disagreed with Keaveney's occupational conclusions. She

stated that the MMPI-3 T-scores or raw results were unavailable for full inspection and that symptom magnification could not be entirely ruled out. Unum also obtained a neurology review from Jonathan Marehbian, M.D., dated July 14, 2026.

**The New Appeal Reviews and Abbreviated Response Opportunity**

30. Unum's August 25, 2026 letter acknowledged that counsel had not received the earlier July 20 review correspondence and information. It memorialized an agreed response period through September 14, 2026 and a reciprocal 15-day period for Unum to review the response and complete the appeal. It also stated that counsel was open to discussing another extension if further appeal documents required a response. That communication concerned an identified response and review schedule; it did not grant advance agreement to every later extension.

31. Grant timely submitted a supplemental response and provider evidence on September 14, 2026. The 12-page fax was delivered that afternoon. It addressed the appeal occupation analysis and medical reviews and enclosed Keaveney's September 10 addendum, Bitton's signed FCE clarification, Fosnocht's September 8 treatment clarification, and Fosnocht's corrected treatment opinion retaining its August 11, 2025 date.

32. Keaveney's September 10 addendum explained the relationship among the performance-validity findings, MMPI-3 symptom-reporting scales, cognitive results and occupational limitations. It supplied MMPI-3 scores of F 72, Fs 97, FBS 78 and RBS 84, with Fp not elevated at 58, and explained that unusually high symptom reporting required cautious interpretation in the broader record rather than an inference of fabrication from the elevations alone. It retained the distinction between circumscribed cognitive inefficiencies and a generalized cognitive disorder.

33. The addendum expressly addressed Grant's capacity as of November 27, 2025. Keaveney anchored her retrospective opinion in the September 22 and October 21, 2025 functional observations and longitudinal treatment evidence, together with the later valid cognitive findings. She concluded that the converging limitations prevented reliable and consistent performance of the Data Quality Manager's material duties at the disputed time.

34. Bitton's clarification distinguished her personally observed tremors and documented concentration loss from Grant's reported eye discomfort. It reaffirmed reliable high effort, acknowledged that eight continuous hours were not directly tested, and explained why the observed computer-task failure and concentration deficits did not support reliable frequent keyboarding and computer-based work throughout a full day.

35. Fosnocht's clarification identified personally observed pauses, requests for reminders, loss of conversational track, confused staring, wincing, head holding, squinting and declining stamina, together with reduced lighting, slower pace and repeated sentences used in treatment. It described typing errors she had seen and expressly related the observed limitations to her November 26 and December 2, 2025 notes. The enclosed corrected opinion stated that treatment began December 19, 2024.

36. After that submission, Ross prepared an addendum dated September 18, 2026 and Marehbian prepared an addendum dated September 22, 2026. Although both retained their adverse conclusions, their addenda evaluated the newly supplied provider explanations and scale information. Ross now interpreted the MMPI-3 validity scales as raising a markedly heightened concern of overreporting, particularly infrequent somatic responses and non-credible memory complaints. Marehbian repeatedly relied on that interpretation in rejecting the supplied evidence of cognitive and functional limitations.

37. On September 24, 2026, Unum transmitted the new addenda to counsel. The 19-page packet was received by counsel's fax system that afternoon. Unum identified the enclosures as additional neuropsychology and neurology reviews developed on appeal and acknowledged a right to review and respond to new information or rationale before its final decision.

38. Unum's September 24 letter stated that its completion timeframe under the prior agreement was September 29, 2026, which would leave "a very short timeframe of a couple days" to review and respond. It requested a further agreement allowing a response through October 9, 2026 and 15 additional days for Unum to review that response and complete the appeal. The requested extension depended on a further agreement; the letter did not itself extend the response period unconditionally.

39. On September 29, 2026, five calendar days after disclosure and across an intervening weekend, Unum issued its final adverse appeal decision. Unum stated that it had requested an extension to allow sufficient opportunity and that, because it had not received a response, it proceeded to finalize its review. It closed the appeal on September 29 rather than completing the proposed further response-and-review schedule.

40. The September 24 development called for a specific, substantive reply. Ross's June review had lacked the scale data necessary fully to assess symptom validity; her new review used the subsequently supplied scales affirmatively to question the credibility of somatic and memory complaints. A meaningful reply would address that stronger interpretation against the non-elevated Fp score, generally acceptable performance-validity findings, absence of random or grossly inconsistent responding, and distinction between elevated symptom

reporting and invalid cognitive performance. Grant was entitled to a reasonable opportunity to develop and present that focused response before Unum adopted the new interpretation.

41. A meaningful reply would also address Marehbian's application of the newly supplied provider explanations: the significance of directly observed typing-task failure and concentration loss for frequent computer work despite the absence of an eight-hour test or EMG; the difference between Fosnocht's identified observations and symptom recitation; and her corrected December 19, 2024 treatment-start date, rather than the December 19, 2025 date repeated in his new addendum. The abbreviated interval deprived Grant of a meaningful predecision opportunity to present this focused rebuttal. The resulting prejudice concerned the validity and weight of evidence central to both the limitation and the sustained-capacity determination.

42. The final decision upheld cessation after November 26, 2025, applying the combined 12-month limitation and concluding that, excluding mental illness and disabilities based primarily on self-reported symptoms, the record did not establish restrictions preventing the occupation's demands. It incorporated the corrected frequent-keyboarding and digital-reading demands, discussed the FCE and provider clarifications, adopted the adverse MMPI-3 assessment, and distinguished the Social Security determination on the basis of the policy's terms and limitation. Those explanations did not establish Grant's ability to sustain the acknowledged duties or properly account for the converging clinical examinations, validated effort, targeted cognitive findings and observed task intolerance supporting his claim.

43. The mandatory administrative review process is exhausted. Grant pursued the Plan's required appeal, and Unum completed that appeal with its September 29, 2026 final adverse decision authorizing an action under ERISA.

**Count I Recovery and Enforcement of Plan Benefits**

ERISA Section 502(a)(1)(B) 29 U.S.C. § 1132(a)(1)(B)

44. Grant incorporates paragraphs 1 through 43 as though fully set forth here.

45. Grant satisfied the applicable coverage and elimination-period requirements and remained disabled under the governing regular-occupation definition when Unum terminated benefits. He remained under regular medical care, sustained the required earnings loss, and furnished proof supporting continuing disability.

46. Unum wrongfully applied the combined twelve-month limitation. Grant's medically treated physical condition and its verifiable functional consequences independently prevented reliable performance of his regular occupation's material and substantial duties, including on a part-time basis, apart from the psychiatric contributors. His continuing disability was not based primarily on manifestations unverifiable by tests, procedures, or clinical examinations standardly accepted in medicine.

47. Unum also wrongly discounted the converging functional examinations, observed work-task failure, supported effort findings, targeted cognitive deficits and longitudinal evidence when assessing the acknowledged occupational demands. Preserved strength, normal structural studies and successful brief or structured tasks did not establish the ability to sustain accurate screen-intensive work, concentration and cognitive pace. The policy does not make a separate structural lesion or eight-hour computer test the exclusive means of verifying those limitations.

48. Unum failed to provide the reasonable predecision response opportunity required by the Plan, ERISA § 503 and 29 C.F.R. § 2560.503-1(h)(4). Its conditional request for a further agreement did not, by itself, supply that opportunity. Its reliance on September 29 as its stated deadline did not excuse disclosure too late to permit a meaningful response to material new evidence and rationale.

49. The operative policy does not clearly grant Unum discretionary authority to determine benefit entitlement or construe disputed terms. Its decision is therefore subject to de novo review. Alternatively, the termination and appeal decision were unreasonable and an abuse of discretion when the policy, the complete relevant evidence, the prejudicial procedural failure and Unum's dual role as decision-maker and benefit payor are considered together.

50. As the insurer obligated to pay benefits and the entity controlling the challenged determinations, Unum is liable for benefits due beginning November 27, 2025, with properly applicable contractual deductions and credits. Grant seeks reinstatement and enforcement of continuing rights subject to the definition and other policy provisions governing each period, including the change after twenty-four months of payments.

51. As a result of Unum's wrongful withholding of benefits, Grant has been deprived of monthly payments owed under the Plan and requires a judgment enforcing his rights.

## Prayer for Relief

WHEREFORE, Grant requests judgment in his favor and against Unum as follows:

A. Award all unpaid long-term disability benefits due beginning November 27, 2025, through judgment, calculated under the policy with applicable deductions and credits;

B. Reinstate Grant's benefits and declare his right to continuing benefits for as long as he satisfies the policy requirements applicable to each period;

C. If the Court determines that further administrative consideration is required for any period, direct a full and fair review that provides a reasonable opportunity to address the new evidence and rationale, with appropriate directions concerning the benefits and issues already resolved by the Court;

D. Award appropriate prejudgment interest and postjudgment interest as allowed by law;

E. Award reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1); and

F. Grant such other relief as is appropriate under 29 U.S.C. § 1132(a)(1)(B).

Respectfully submitted,
**FEDEN LAW GROUP PLLC**

/s/ Nicholas Feden
Nicholas D. Feden, Esquire
Pennsylvania Attorney ID No. 307902
711 West Ave.
Jenkintown, PA 19046
Telephone: (267) 234-7465
nfeden@fedenlawgroup.com
Counsel for Plaintiff
Dated: November 10, 2026